HOUSEHOLD FINANCE CORPORATION, Appellant,

v.

BANCOHIO, Appellee.

[Cite as *Household Finance Corp. v. BancOhio* (1989) 62 Ohio App.3d 691.]

Court of Appeals of Ohio,
Montgomery County.

No. 11249.

Decided May 2, 1989.

*Stephen D. Miles,* for appellant.

*Diane K. Gaffield,* for appellee.

---

BROGAN, Judge.

Appellant, Household Finance Corporation ("Household Finance"), appeals from an order granting summary judgment to appellee, BancOhio.

On April 20, 1988, appellant filed this action for repossession of a heat pump located at 3687 Alton–Darby Creek Road, Hilliard, Ohio. In its complaint, appellant alleged that it possessed a purchase money security interest in the heat pump which it financed for one Morland McCarty on or about December 6, 1985 (Complaint Paragraph 1). It is undisputed that appellant did not record its security interest by executing a fixture filing.

At the time the heat pump was installed, BancOhio was the mortgagee of 3687 Alton–Darby Creek Road. (Complaint Paragraph 3.)

Morland McCarty defaulted on both his mortgage payments and his heat pump payments. BancOhio foreclosed its mortgage and is now the owner of the aforementioned real property. (Complaint Paragraph 3.) Household Finance demanded the return of its heat pump; however, BancOhio refused to permit Household Finance to repossess it. This suit followed.

BancOhio moved for summary judgment and submitted the affidavit of Frederick Stalter, Vice President of BancOhio National Bank. Stalter viewed the premises in question and stated:

"4. The house is heated with a central-fired electric heat pump system with central air conditioning attached.

"5. The heat pump is located outside of the house and is bolted to a concrete slab with wires/tubes going into the house.

"6. The heat pump described above was installed at the side of the house on the property on the date BancOhio took title.

"7. Removal of the heat pump would effectively remove the heating system from the house. Such removal would require substantial and costly rewiring."

In its motion for summary judgment, BancOhio argued that the heat pump was a fixture and that because Household Finance had failed to execute a fixture filing, its interest was subordinate to that of BancOhio.

Household Finance submitted a memorandum in opposition to the motion for summary judgment wherein it contended that the heat pump was not a fixture and that therefore no fixture filing was necessary to protect its

priority interest. Household Finance submitted the affidavit of Earl Hightower, Manager of Household Finance Corporation at Salem Mall. He stated: "4. The heat pump is located outside of the house and may be removed."

The trial court found the heat pump to be a fixture and granted summary judgment in favor of BancOhio. It is from this judgment that appellant now appeals.

Household Finance sets forth the following assignment of error:

"The trial court improperly granted summary judgment in determining that a heat pump was a fixture."

Civ.R. 56(C) states, in pertinent part:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Because we find that the material facts are not in dispute and that BancOhio is entitled to judgment as a matter of law, we will affirm the judgment of the trial court.

Initially, we note that the affidavits submitted by Household Finance and BancOhio do not contradict each other. Stalter does not state that the heat pump cannot be removed but states that its removal would "require substantial and costly rewiring." Hightower, for his part, does not deny Stalter's statements that the home on the property is heated by the heat pump system or that the system would be costly to replace if removed. Finally, Hightower does not dispute Stalter's observation that the heat pump is connected to the home "with wires and tubes going into the house."

This case is governed by the Supreme Court decision set forth in *Holland Furnace Co. v. Trumbull S. & L. Co.* (1939), 135 Ohio St. 48, 13 O.O. 325, 19 N.E.2d 273, which contains facts analogous to those at bar. The *Holland* court framed the issue therein as follows:

"The sole question involved in this case is whether a warm-air furnace installed by slight physical attachment in the basement of a previously mortgaged dwelling house, without the knowledge or consent of the mortgagee, which heater or furnace replaced a worn out and worthless one under a conditional sales contract between the owner of the dwelling house and a furnace company supplying the furnace, whereby it is to retain a personal property status and title is to remain in the furnace company until final payment is made therefor, becomes a fixture and passes with a deed for the dwelling house and premises to the mortgagee-purchaser at a judicial sale

resulting from a foreclosure of the mortgage." *Id.* at 51, 13 O.O. at 327, 19 N.E.2d at 274.

In its discussion of the fixture issue, the *Holland* court reaffirmed its decision in *Teaff v. Hewitt* (1853), 1 Ohio St. 511, wherein it found at 135 Ohio St. at 52, 13 O.O. at 327, 19 N.E.2d at 275:

"A combination of certain legal tests based upon or growing out of the relationship between the chattel and the real estate have been laid down by the courts to determine whether and when a chattel becomes a fixture. First, to become a fixture it is essential that the chattel in question be annexed to some extent to the realty. Second, the chattel must have an appropriate application to the use or purpose to which the realty to which it is attached, is devoted. Third, there must be an actual or apparent intention upon the part of the owner of the chattel in affixing it to the realty to make such chattel a permanent part of such realty."

The court then proceeded to apply these tests to the *Holland* facts.

In *Holland,* the furnace was installed inside the home and was attached to "warm-air registers or pipes" only by "metallic sleeves or sections of pipe." *Id.* at 53, 13 O.O. at 327, 19 N.E.2d at 275. The court found that the first test was satisfied, stating, "the annexation may be very slight * * * if the other tests are met." *Id.* Likewise, we find that the heat pump in the case at bar is sufficiently, if slightly, annexed to the realty via wires and tubes. Therefore, the heat pump meets the first test of *Teaff.*

The *Holland* court found that the furnace satisfied the second test as well. The court stated at 135 Ohio St. at 53, 13 O.O. at 327–28, 19 N.E.2d at 275:

"[The furnace] was indispensable for the comfortable enjoyment of a dwelling house in this climate. When installed, it certainly became an integral and necessary part of the whole premises * * *. The adaptation of the chattel, in this case the furnace, to the permanent use and enjoyment of the freehold; the lack of utility of the premises if it were severed and the necessity of replacing it with another or similar kind if it were removed, all indicate that the second test of a fixture is satisfied in the case of this furnace."

The affidavits in the instant case reveal that the premises in question would suffer a similar lack of utility if the heat pump were to be removed. The pump is the heat source for the home and it would be costly to replace. We find that the heat pump meets the second test of a fixture.

Finally, the *Holland* court found that the furnace met the third test of a fixture. In its discussion of this test, the court stated at 135 Ohio St. at 53–54, 13 O.O. at 328, 19 N.E.2d at 275–276:

"[I]t is not necessarily the real intention of the owner of the chattel which governs. His apparent or legal intention to make it a fixture is sufficient. This intention ought to be apparent, from the situation and surroundings to those who may deal with or become interested in the real estate to which the chattel is attached. His intention not to make it a part of the realty must not be secret, but may be inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, the purpose and use for which the annexation is made, the utility in use or the indispensability of the combination when the chattel is once attached to the realty in the use of the whole, and the relationship of the owner of the chattel to the owner of the realty and to others who may become interested in or owners of the property. The fact that a chattel attached to realty is or is not a fixture must appear from an inspection of the property itself, in the absence of actual notice to the contrary, or of such circumstances as would put a prudent person upon inquiry to ascertain the fact."

We find that the heat pump under present consideration meets the third test of a fixture as well. The apparent intention of the former property owner, as indicated by the facts that it is bolted to a concrete slab outside the home, that it is connected to the home by wires and tubes, that it is the heat source for the home, and that removal would necessitate substantial and costly rewiring, was that the heat pump should become part of the real property. Therefore, pursuant to the three tests enunciated in *Teaff*, we hold that the heat pump is a fixture.

The *Teaff* fixture tests are not the sole indicators of whether or not a chattel is a fixture. We must also consider the test set forth in R.C. 1309.32(A)(1): "Goods are 'fixtures' when they become so related to particular real estate that an interest in them arises under real estate law."

As indicated above, Ohio law dictates that the heat pump did become part of the realty to which it was affixed. Therefore, the heat pump satisfies the definition of a "fixture" set forth in R.C. 1309.32.

In order to protect its purchase money security interest in the heat pump, Household Finance should have executed a fixture filing. R.C. 1309.21(A)(4) discloses: "A financing statement must be filed to perfect all security interests except * * * [a] purchase money security interest in consumer goods; but fixture filing is required for a priority over conflicting interests in fixtures to the extent provided in section 1309.32 of the Revised Code." Although the heat pump can be characterized as a "consumer good" (see R.C. 1309.07[A] ), R.C. 1309.21 requires a fixture filing to preserve a priority purchase money security interest therein.

Because Household Finance admittedly failed to execute a fixture filing to preserve its interest in the heat pump, its assignment of error must be overruled.

In accordance with this opinion, the judgment of the trial court will be affirmed.

*Judgment affirmed.*

WOLFF, P.J., and GRADY, J., concur.