Hast, J.
 

 The sole question involved in this case is whether a warm-air furnace installed by slight physical attachment in the basement of a previously mortgaged dwelling house, without the knowledge or consent of the mortgagee, which heater or furnace replaced a worn out and worthless one under a conditional sales contract between the owner of the dwelling house and a furnace company supplying the furnace, whereby it is to retain a personal property status and title is to remain in the furnace company until final payment is made therefor, becomes a fixture and passes with a deed for the dwelling house and premises to the mortgagee-purchaser at a judicial sale resulting from a foreclosure of the mortgage.
 

 There is no question that, as between the vendor of a furnace and the owner of the premises in which it is installed, no other parties being interested, a contract may be made whereby the furnace will remain personal
 
 *52
 
 property until paid for and may be removed in ease there is a default in payment. But the question here is whether such a contract is effective against a subsequent purchaser for value, without notice, of the premises in which the furnace is installed. The solution of this problem requires an examination of the law of fixtures. A fixture may be defined as an item of property which was a chattel but which has been so affixed to realty for a combined functional use that it has become a part and parcel of the realty. The combined functional use must be of such character as to indicate to all persons dealing with the realty the intention and purpose of the owner of the chattel to make the combination a permanent attribute of the realty so as to pass in ownership with it. A combination of certain legal tests based upon or growing out of the relationship between the chattel and the real estate have been laid down by the courts to determine whether and when a chattel becomes a fixture. First, to become a fixture it is essential that the chattel in question be annexed to some extent to the realty. Second, the chattel must have an appropriate application to the use or purpose to which the realty to which it is attached, is devoted. Third, there must be an actual or apparent intention upon the part of the owner of the chattel in affixing it to the realty to make such chattel a permanent part of such realty.
 
 Teaff
 
 v.
 
 Hewitt,
 
 1 Ohio St., 511, 59 Am. Dec., 634.
 

 An elaboration of the above tests as applied to the facts in this case may be helpful, keeping in mind the fact that the conflicting rights to be determined are between the vendor furnace company and the loan company which is not only a prior mortgagee but a subsequent purchaser for value, without notice, at a judicial sale. "While, to make a chattel a fixture, there must be physical annexation of the chattel to the realty, the annexation may be very slight. Courts have held, in some instances, that to constitute a fixture the
 
 *53
 
 attachment of a chattel must be so substantial that it could not be severed or removed without injury to the realty or to the chattel itself. But this test is now regarded as the least important, and slight attachment is sufficient if the other tests are met. In the instant case the attachment between the furnace and the warm-air registers or pipes of the house was accomplished by connecting the two with metallic sleeves Or sections of pipe. Such attachment, in the opinion of the court, was sufficient to meet this test or requirement as to attachment or annexation. Did the furnace have an appropriate application to the use of the real estate or premises in which it was installed? It is conceded that a heating plant, such as was installed by the furnace company in this instance, was indispensable for the comfortable enjoyment of a dwelling house in this climate. "When installed, it certainly became an integral and necessary part of the whole premises and ordinarily it would not be taken out or dismantled until it was worn out by use. If the owner of the realty had become the owner of the furnace it certainly would have passed with the realty as a part of it in any transfer or sale of the premises. In this respect it would be different from a heating’ stove whose function would be to heat any single room of the house. The adaptation of the chattel, in this case the furnace, to the permanent use and enjoyment of the freehold; the lack of utility of the premises if it were severed and the necessity of replacing it with another or similar kind if it were removed, all indicate that the second test of a fixture is satisfied in the case of this furnace. The third test is the intention of the owner of the chattel to make it a part of the realty. In no case is a fixture created without the real or apparent intention of the party making the annexation of the chattel to make it a permanent accession to the freehold. But it is not necessarily the real intention of the owner of the chattel which governs, His appar
 
 *54
 
 ent or legal intention to make -it a fixture is sufficient. This intention ought to be apparent, from the situation and surroundings, to those who may deal with or become interested in the real estate to which the chattel is attached. His intention not to make it a part of the realty must not be secret, but may be inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure ánd mode of annexation, the purpose and use for which the annexation is made, the utility in use or the indispensability of the combination when the chattel is once attached to the realty in the use of the whole, and the relationship of the owner of the chattel to the owner of the realty and to others who may become interested in or owners of the property. The fact that a chattel attached to realty is or is not a fixture must appear from an inspection of the property itself, in the absence of actual notice to the contrary, or of such circumstances as would put a prudent person upon inquiry to ascertain the fact.
 

 In the instant case, the loan company had a properly recorded subsisting real estate mortgage on the premises at the time the furnace company installed its furnace, and the furnace company was bound by such record with constructive notice that the loan company was not only interested in the premises, but held perhaps the paramount interest in it by way of mortgage lien; and that in the course of events such mortgage might be foreclosed, a judicial sale ensue, as it did ensue, and that a purchaser would purchase the premises, probably without notice of its claims, for a sum which would include the value of the furnace in question. Can it be said, under all these circumstances, that the furnace company had not allowed it to be inferred by this innocent purchaser that the furnace was a fixture and an integral part of the house at the time of this judicial sale? The court is of opinion, under the circumstances, that as between the furnace com
 
 *55
 
 pany and the loan company, as the purchaser at the judicial sale for value and without actual notice, this furnace had become a fixture and passed as a part of the real estate at the sale. No doubt there was an actual intention upon the part of the furnace company and owner that the furnace should remain a chattel and not become a fixture until it was paid for by the owner, but this intention was not brought to the attention of the loan company. The fact is that it did not have any actual notice of the claim of the furnace company at the time it became the purchaser of the premises at the judicial sale, and for reasons now stated it did not have constructive notice of the claim of the furnace company.
 

 It will be observed that the furnace company entered into its conditional sales contract for the sale of the furnace on September 16, 1930, and did not place a copy of the contract on record as required by Section 8568, General Code, until July 1, 1933, but the court does not regard this delay as a material factor in this case. This court holds that the filing of a copy of this contract in compliance with this section did not constitute constructive notice to the loan company, as the purchaser at the sale, of the claim of the furnace company under such conditional sales contract. ' In the opinion of the court there was no legislative intent in the passage of Section 8568, General Code, to make it operate as constructive notice affecting real estate titles. There is nothing in this statute which provides or requires any description of the real estate to be affected in case the personal property sold under the conditional sales contract is attached to or becomes a part of the real estate. Furthermore, the statute provides that the contract or copy must be filed in the county where the purchaser resides, if he be a resident of the state. Consequently, if he is a resident of a county other than- that in which the real estate to be affected is located, there would be no record whatever
 
 *56
 
 in such latter county. We do not think it was intended that real estate titles should he thus affected, and it is not necessary to search the conditional sales record to determine the condition of title to real estate. Of course a different rule applies in the sale of a chattel which does not become a fixture. In other words Section 8568, G-eneral Code, affords constructive notice to those dealing with a chattel as chattel property. 19 Ohio Jurisprudence, 96;
 
 Brennan
 
 v.
 
 Whitaker,
 
 15 Ohio St., 446;
 
 Case Mfg. Co.
 
 v.
 
 Garven,
 
 45 Ohio St., 289, 13 N. E., 493. The case last cited furnishes an analogous situation. A chattel mortgage had been taken on a certain engine, boiler and attachments, located in a manufacturing plant, with an agreement between the parties that the title to the property was to remain in the mortgagee until the sum represented by the mortgage was paid. The court held that, “whilst by the agreement of the parties, the property may be made to preserve the character of personalty, yet, when it is so attached, that, but for the agreement, it would be a fixture, such agreement ’would b;e of no avail against a subsequent mortgagee of the realty without notice of it; nor will the filing of a mortgage upon it as chattel property, duly executed and delivered as such, of itself constitute such notice.”
 

 This court is ayare of the fact that in many jurisdictions outside of Ohio, and in some appellate districts in this state, the courts have held that where a furnace is sold under a conditional sales contract, whereby the vendor, by the terms of the contract, retains title to the furnace until paid for, it does not attach to the realty, and may be removed on default if the removal can be accomplished without injury to the realty; but this court is of opinion that the law herein expressed furnishes the better rule since it gives certainty to real estate titles and avoids confusion and litigation. The claim is made that the adoption of this rule tends to take the property of one person and give
 
 *57
 
 it to another without requiring it to he paid for. The answer to this claim is that the vendor of the chattel may have full protection if he follows proper legal processes. A mechanic’s lien will protect him against subsequent lien-holders and
 
 bona fide
 
 purchasers for value, while a waiver, not only from the owner as contained in the conditional sales contract but from the prior lienors on the real estate who may in fact have a greater interest in the realty than the owner himself, would give the necessary protection to the furnace company and avoid future controversies. This decision is confined to the facts in this case, which involves the rights of a subsequent purchaser for value, without notice.
 

 Finding no error in the judgment of the Court of Appeals, it is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Day, Zimmerman, Williams, Myers and Matthias, JJ., concur.